**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA D. HARRIS,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. CV 08-0831 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is the Motion for Summary Judgment filed by Plaintiff Angela D. Harris ("Harris") and the Cross-Motion for Summary Judgment filed by Defendant Commissioner of Social Security, Michael Astrue ("Defendant"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and having considered the parties' papers and the relevant legal authority, the Court hereby GRANTS IN PART and DENIES IN PART Harris' Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART Defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

**A.   Factual Background.**

Harris brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Defendant's final decision denying her request for Social Security benefits. Harris is a

1 forty-six year-old female, approximately five feet and four inches tall, and her weight fluctuates
2 between 232 and 255 pounds. (Administrative Record ("AR") at 388.) She has a high school
3 education and an Associates Degree in general business. (AR at 73.) Harris worked as an
4 office assistant from 1992 until 1997. (AR at 69.) She left work when her niece was born to
5 take on that child's primary care. (AR at 368.)

6 In December 2003, Harris slipped down the stairs leading up to her apartment and began
7 to experience lower back pain. (AR at 68-69.) Harris sought treatment from a variety of
8 different care providers before she filed for Supplemental Security Income ("SSI") in
9 September 2004. (AR at 61, 135, 138, 141, 143, 165, 255.) On November 2, 2004, a consulting
10 physician, Dr. Pon, examined Harris and reviewed her medical history. (AR at 113-15.) He
11 then made findings about her functional capacity. (AR at 114.)

12 On June 6 and December 4, 2006, Harris' primary care physician, Dr. Newell,
13 conducted medical assessments for the reconsideration of Harris' SSI Application. (AR at 171-
14 79.) Dr. Newell diagnosed Harris with a herniated disc, hypertension, diabetes, headaches, and
15 obesity. (AR at 176.) Her assessment of Harris' functional capacity was far more restrictive
16 than Dr. Pon's. (AR at 171-72, 177.)

17 The Court shall discuss additional facts as necessary in its analysis of the motions.

**B.      Procedural History.**

19 Defendant denied Harris' application for SSI in December 2004. (AR at 23.) Harris
20 filed for reconsideration of her SSI application and requested a hearing which took place before
21 an Administrative Law Judge ("ALJ") on February 13, 2007. (AR at 359, 361.) The ALJ stated
22 that he considered all the evidence in the administrative record as well as testimony from Harris
23 and a vocational expert, before he determined that Harris was not disabled. (AR at 23, 25, 33.)
24 On December 5, 2007, Defendant denied Harris' request to review the ALJ's decision.

**ANALYSIS**

**A.      Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

27 A federal district court may not disturb the Commissioner's final decision unless it is
28 based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C.

2

§ 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

The plaintiff has the burden of establishing a prima facie case for disability. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). The ALJ follows a five-step process in determining whether the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *see* 20 C.F.R. § 404.1520. First, the claimant must not be engaging in substantial gainful activity. § 416.920(b). Second, the claimant must have a severe impairment. § 416.920(c). Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant will be found disabled without consideration of age, education, or work experience. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all relevant medical and other evidence in the claimant's case record. § 416.920(e). If the claimant can still perform her past relevant work, she will not be found disabled, otherwise the ALJ will go to step five. § 416.920(f). At the fifth step, if the claimant's impairments prevents her from making an adjustment to any other work in the national economy, she will be found disabled. § 404.1520(g). The claimant has the burden of proof at steps one through four; the burden shifts to the ALJ at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In Harris' case, the ALJ found, at step one, that Harris had not engaged in substantial gainful activity since December 17, 2003. (AR at 25.) At step two, he found that Harris' degenerative disk disease with herniation was a severe impairment. (AR at 25.) At step three, the ALJ found that Harris' impairment or combination of impairments did not meet or equal a

3

1  listed impairment in Appendix 1. (AR at 26.) At step four, the ALJ found that Harris' residual
2  functional capacity did not prohibit her from working and rejected Dr. Newell's opinion in
3  favor of Dr. Pon's opinion. (AR at 27, 31-32.) The ALJ also determined that Harris was not
4  "fully credible insofar as she alleges that she is precluded [from] performing all substantial
5  gainful activity ... ." (AR at 32.) The ALJ concluded that Harris was not disabled and denied
6  her application for SSI. (AR at 33.)

7  For the reasons discussed herein, the Court finds that the ALJ's determination that
8  Harris not fully credible was erroneous, because the ALJ failed to state clear, convincing, and
9  consistent reasons in support of his conclusion. The resulting error was not harmless.
10 Therefore, the Court GRANTS IN PART Harris' motion for summary judgment and remands
11 this issue to the ALJ. Harris also argues that: (1) the ALJ failed to give due consideration to her
12 obesity, diabetes, and hypertension as "severe" impairments at step two of the sequential
13 analysis; (2) the ALJ erroneously concluded that the combination of her impairments did not
14 equal Listing 1.04 at step three; and (3) the ALJ erroneously rejected the opinion of her treating
15 physician, Dr. Newell, in favor of the opinion of the examining physician, Dr. Pon. The Court
16 finds these claims are without merit, and Harris' motion is DENIED IN PART and Defendant's
17 motion is GRANTED IN PART on these claims.

### C. The ALJ Failed to State Clear, Convincing, and Consistent Reasons for Discrediting Harris' Pain Testimony, and That Error Was Not Harmless.

20 Harris argues that the ALJ erred by not fully crediting her testimony without providing
21 clear, convincing, and consistent reasons. An ALJ must engage in a two-step analysis in order
22 to make a determination of credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir.
23 2007). First, the ALJ must decide whether there is objective medical evidence of an underlying
24 impairment "'which could reasonably be expected to produce the pain or other symptoms
25 alleged.'" *Id.* at 1037 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en
26 banc)). To meet this standard, a claimant must show that her impairments "*could reasonably be*
27 *expected to* (not that it did in fact) produced some degree of symptom." *Smolen v. Chater*, 80
28 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). Second, if the first test is satisfied and

4

there is no evidence of malingering, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Id.* at 1284. The ALJ cannot use general conclusions but must "specify what testimony is not credible and identify the evidence that undermines the claimant's complaints." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found that Harris' "medically determinable impairments could reasonably be expected to produce the alleged symptoms[,]" and he did not cite any specific evidence of malingering. (AR at 32.) The ALJ described Harris' current living situation and noted that Harris used to take walks but that now her pain prohibits her from doing so, that she needs help grocery shopping, and that she attempted to take two vacations which caused her much pain. (AR at 32.) This evidence illustrates the different ways pain detrimentally affects Harris' life. Despite citing evidence consistent with Harris' subjective symptoms, the ALJ summarily discredited Harris' pain testimony stating "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR at 32.) The ALJ also noted that "based on her presentation and the Social Service records [citation omitted], showing her obstruction of every possible remedial effort, I am [led] to conclude either that the situation is being exaggerated or that the situation of being 'trapped' somehow suits her psyche." (AR at 32.) He added that Harris' characterization of herself as "living in a 90 year old body" was an exaggeration of her situation. (AR at 32.) Even though the ALJ made these adverse credibility findings, the above cited evidence contradicts his claim that Harris' testimony conflicted with her subjective symptoms. The ALJ must "identify what testimony is not credible[,]" *and* he must *also* specify "what evidence undermines the claimant's complaints." *See Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Therefore, the ALJ erred when he cited evidence that was inconsistent with his adverse credibility determination.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch*, 400 F.3d at 679. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

5

different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). On this record, the Court cannot say that no reasonable ALJ would have decided the credibility issue differently, because evidence in the record both supports and conflicts with the ALJ's determination that Harris was not fully credible.

The Ninth Circuit has identified several different types of evidence on which the ALJ may rely in discrediting an allegation of pain, including "testimony about the claimant's daily activities" and "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In this case, Harris' daily activities suggest a level of functional capacity inconsistent with her subjective symptoms of pain. Harris cares for her five daughters, who all are living at home, including a ten year-old with her own health problems. (AR at 366-67.) She can travel and shop for groceries alone. (AR at 115, 375, 377.) However, Harris' testimony of her limitations also is consistent with her subjective pain symptoms. Harris testified that she can only get four or five hours of sleep, (AR at 309), she is unable to take baths, (AR at 374), and she cannot watch television or read anything that requires her to sit for more than an hour at a time, (AR at 374). Additionally, the record suggests that Harris had not explained adequately her failure to follow several different prescribed courses of treatment. Doctors instructed Harris to lose weight, but she failed to comply. (AR at 165.) Doctors prescribed Harris a therapeutic TENS unit, but she resisted it because she "doesn't want people to see her with it." (AR at 239.) Doctors also recommended surgery to Harris, but she declined. (AR at 165, 211, 238, 239.) Yet, Harris explained that her back pain prevented her from exercising pursuant to her weight loss program, (AR at 352), that the TENS unit only made her pain go from an eight to a five, (AR at 238), and her family therapist noted that Harris was concerned about taking care of her children during recovery from surgery, (AR at 326).

The ALJ erred when he found Harris not fully credible but cited evidence inconsistent with this conclusion. *See Smolen*, 80 F.3d at 1281. The Court cannot affirm a decision based on legal error. *See* 42 U.S.C. § 405(g). Additionally, the ALJ's error was not harmless. *See Burch*, 400 F.3d at 679. As set forth above, there is evidence in the record that both supports

6

and conflicts with the ALJ's determination that Harris was not fully credible. For that reason, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. The ALJ's decision must be remanded so that he may have an opportunity to state clear and convincing reasons for discrediting Harris' subjective symptoms. *See Smolen*, 80 F.3d at 1282.

**D.   Substantial Evidence in the Record Supports the ALJ's Conclusion That Harris' Obesity, Diabetes, and Hypertension Were Not Severe Impairments.**

Harris argues that the ALJ failed to give due consideration to her obesity, diabetes, and hypertension as impairments at step two of the sequential analysis. Harris asserts that, had the ALJ properly considered these impairments, he would have found that they met the criteria for severity, either when considered on their own or in combination with Harris' other impairments.

A severe impairment is one that significantly limits a person's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment is not severe if it is "a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28). The ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.*; 20 C.F.R. § 416.923. The ALJ also "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citing SSR 88-13).

**1.   The ALJ inadequately considered Harris' obesity at step two, but any error was harmless.**

Despite the fact that the Social Security Administration removed obesity from the listing of impairments, an ALJ must still consider obesity when evaluating disability. *Ceyala v. Halter*, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003); SSR 02-01p at p. *1. As with any other type of impairment, obesity will be considered "severe" only when, either alone or in combination with another medically determinable impairment, "it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p at p. *4. The ALJ is not permitted to make assumptions about the severity of obesity or its affect on other impairments

7

but, rather, has a duty to "'evaluate each case *based on the information in the case record.*'" *Burch*, 400 F.3d at 682 (quoting SSR 02-01p) (emphasis added in *Burch*).

      At step two, the ALJ determined that Harris' various back ailments were severe, and that her obesity, hypertension, and diabetes were non-severe. (AR at 25.) The ALJ did not discuss Harris' obesity after reaching this conclusion at step two. Therefore, the ALJ erred by failing to make specific findings in the record about the severity of obesity or its impact on other impairments. *See Burch*, 400 F.3d at 683. However, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Id.* at 679. An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

      In *Burch*, the Ninth Circuit assumed, without deciding, that the ALJ had committed a legal error by failing to consider the severity of Burch's obesity at step two of the sequential analysis. *Id.* at 682. The court found, however, that the ALJ continued with the sequential analysis and properly considered obesity in the remaining steps. *Id.* Therefore, despite the assumption of error, the Ninth Circuit found no prejudice to Burch and affirmed the ALJ's determination of non-disability. *Id.* at 684.

      In this case, although the ALJ failed to consider obesity at step two, he found that Harris' herniated disc was a "severe impairment" and continued with the sequential analysis. (AR at 25.) At step three, the ALJ briefly considered Harris' obesity and concluded that "objective medical evidence does not suggest that the cumulative effects of obesity equal the criteria set forth in any Section of the Listing of Impairments." (AR at 26.) At step four, the ALJ undertook an extensive evaluation of Harris' medical record and treatment history. From that evaluation, the ALJ made findings about Harris' ability to function in light of her herniated disc, obesity, diabetes, hypertension, and headaches. (AR at 28-32.) For reasons stated in Part E of this Order, the ALJ adequately considered the severity of Harris' obesity and its impact on Harris' functional capacity at steps three and four.

8

As in *Burch*, despite the ALJ's failure to adequately consider Harris' obesity at step two, "the ALJ properly considered [Harris'] obesity to the extent required based on the record ... ." *See Burch*, 400 F.3d at 684. Any error at step two was "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055. Harris' motion is denied in part and Defendant's motion is granted in part on this basis.

**2. Substantial evidence supports the ALJ's decision that Harris' diabetes and hypertension were not severe, and these conditions were sufficiently considered.**

The ALJ cited several entries in Harris' medical record to support his conclusion that Harris' diabetes and hypertension were non-severe impairments. (AR at 25.) For example, Harris' diabetes and hypertension were "stable" on April 14, 2005. (AR at 225). By late 2005, her diabetes was "improved" and her blood pressure was "excellent." (AR at 213, 217.) These conditions did not interfere with Harris' ability to do basic work activities. Harris stated that her physical functioning is limited by her back pain, which numerous physicians have traced to her herniated disc. (AR at 114, 214, 248.) Harris argues that her allegedly "unmanageable" diabetes and hypertension prevent her from undergoing corrective back surgery and, therefore, constitute "severe" impairments. This claim is not supported by the record, which shows that Harris' physicians recommended back surgery with no conditions. (AR at 157, 165, 211, 238-39.) Substantial evidence in the record shows that Harris' diabetes and hypertension at most had no more than a minimal effect on her ability to do basic work activities. Accordingly, the Court must affirm the ALJ's determination that these conditions were "not severe." Harris' motion is denied in part and Defendant's motion is granted in part on this basis.

**E.  The ALJ Adequately Explained His Conclusion That Harris' Impairments Did Not Equal a Listed Impairment, and This Conclusion Was Supported by Substantial Evidence in the Record.**

Harris argues that, at step three, the ALJ did not adequately set forth the reasons for his conclusion that the combination of her impairments did not equal Listing 1.04. *See* 20 C.F.R. § 416.920(d). Harris also argues that the ALJ's conclusion was not supported by substantial evidence. To find that a claimant's impairments or combination of impairments equal a listed requirement, an ALJ must compare the "'symptoms, signs and laboratory findings' about [a]

9

1    claimant's impairment as evidenced by the medical records 'with the medical criteria shown
2    with the listed impairment.'" *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (quoting 20
3    C.F.R. § 404.1526). "Medical equivalence will be found 'if the medical findings are at least
4    equal in severity and duration to the listed findings.'" *Id.*

### 1. The ALJ adequately explained his conclusion that Harris' impairments did not equal Listing 1.04.

The Ninth Circuit has held that, "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effect of the impairments." *Marcia*, 900 F.2d at 175. However, "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). In *Lewis*, as in *Marcia*, the ALJ offered a short "boilerplate" finding to support the conclusion that the claimant did not have an impairment or combination of impairments that met or equaled a listed requirement. *Id.* at 512; *Marcia*, 900 F.2d at 176. Both courts agreed that those conclusory statements, on their own, would be insufficient to support a finding at step three. *Lewis*, 236 F.3d at 513; *Marcia*, 900 F.2d at 176. Yet, unlike the ALJ in *Marcia*, the ALJ in *Lewis* supported his step three conclusion in the "Statement of the Case" section of his decision with a discussion of the claimant's conditions and treatment history. *Lewis*, 236 F.3d at 513. The Ninth Circuit found that this discussion was sufficient to fulfill the ALJ's duty. *Id.*

Here, at step three, the ALJ recited the criteria for Listing 1.04—disorders of the spine. (AR at 26.) The ALJ stated that he had "carefully considered" Harris' impairments, but found that they did not "meet[] or equal[] any of the Listings found in Section 1.04 of 20 CFR Part 404, Subpart P, Appendix 1." (AR at 26.) The ALJ discussed the matter at step three using only these short "boilerplate" statements. However, at step four, the ALJ discussed, at length, Harris' subjective symptoms, medical and treatment history, impressions and diagnosis from treating and examining physicians, as well as information about Harris' daily activities and living situation. (AR at 28-32.) The discussion and evaluation of evidence at step four supports

the ALJ's conclusion at step three that Harris' impairments did not equal Listing 1.04. *Lewis* does not require that the support for the ALJ's conclusions be placed in a specific section of the decision. *Lewis*, 236 F.3d at 513. Therefore, the ALJ did not err by discussing his step three conclusion at step four. *See id.* Harris' motion is denied in part and Defendant's motion is granted in part on this basis.

### 2. Substantial evidence supports the ALJ's conclusion that Harris' impairments do not equal a listed impairment.

Harris argues that her impairments equal the requirements set forth in Listing 1.04 and, therefore, the ALJ's decision to the contrary is not supported by substantial evidence. Listing 1.04 describes the various disorders of the spine, from which a claimant can establish disability. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, 104. Listing 1.04 states the criteria for an impairment as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spin, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising tests (sitting and supine);
>
> or
>
> ....
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imagining, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* at 104(A),(C).

Functional loss is "the inability to ambulate effectively on a sustained basis ... , or the inability to perform fine or gross movements effectively on a sustained basis" lasting for at least twelve months. *Id.* at 1.00(B)(2)(a). The inability to ambulate effectively is "an extreme limitation of the ability to walk" or "having insufficient lower extremity functioning ... to permit

1    independent ambulation without the use of hand-held assistive device(s) ... ." *Id.* at

2    1.00(B)(2)(b)(1). Effective ambulation, on the other hand, is characterized by the ability to

3    sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of

4    daily living[,]" "travel without companion assistance[,]" use public transportation, shop, and

5    climb a few steps at a reasonable pace. *Id.* at 1.00(B)(2)(b)(2).

6    Harris' back ailments stem from either a herniated disc or a degenerative disc disease.

7    (AR at 25.) Despite this injury, Harris does not have functional limitations, as defined by

8    subsection (A) of Listing 1.04. Various treating and examining physicians had positive

9    impressions of Harris' physical functioning. Dr. Pon observed Harris walking around the

10   examining room and sitting comfortably and without complaint during the examination. (AR at

11   113.) She could squat and come to an upright position normally. (AR at 113.) On a several

12   different occasions, a straight-leg raising test produced negative results. (AR at 113, 126, 131,

13   141, 143, 163.) The "injured" muscles were not affected by spasms. (AR at 114, 131, 138.)

14   Further, Harris can ambulate effectively, as defined by subsection (C) of Listing 1.04. Harris

15   has a good range of motion and a normal gait. (AR at 114, 126.) In fact, one physician

16   described Harris as having a "grossly full active range of motion" in her bilateral lower

17   extremities. (AR at 139.) Harris also is independent in her daily living—a characteristic

18   inconsistent with an inability to ambulate effectively as defined by Listing 1.00(B)(2). (AR at

19   113.) She provides primary care for four of her daughters, and her fifth daughter lives at home

20   as well. (AR at 366-67.) She does not need help in personal care, hygiene, or the upkeep of her

21   home. (AR at 62, 374.) She shops for groceries, often alone. (AR at 375.) She can travel

22   alone, both driving and on public transportation. (AR at 115, 375, 377.) She also routinely

23   climbs the six steps leading up to her apartment—the same steps that were responsible for her

24   injury. (AR at 113, 372.)

25   Harris argues that she is limited in her daily living to a degree consistent with an

26   extreme limitation of the ability to walk or carry out basic activities. Harris reported that she

27   experiences constant pain when standing and walking. (AR at 28.) She stated that she cannot

28   sleep for more than four or five hours at a time. (AR at 373.) Also, she had one positive

1  straight leg raising test.  (AR at 163.)  Although this is reasonable evidence indicating that

2  Harris' ailments impair her ability to function, it must be weighed against the substantial

3  evidence in support of the ALJ's decision.  "Where evidence is susceptible to more than one

4  rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch*, 400 F.3d at 679.

5  The ALJ's finding that Harris' impairments did not equal a listed impairment is

6  supported by substantial evidence.  Harris' motion is denied in part and Defendant's motion is

7  granted in part on this basis.

**F.  The ALJ Did Not Err by Rejecting the Treating Physician's Opinion in Favor of the Examining Physician's Opinion.**

10  Harris argues the ALJ erroneously rejected the opinion of her treating physician, Dr.

11  Newell, in favor of the opinion of the examining physician, Dr. Pon.  For the reasons discussed

12  herein, despite the fact that Dr. Newell's opinion was "well-supported by medically acceptable

13  clinical and laboratory diagnostic techniques[,]" her opinion was "inconsistent with the other

14  substantial evidence" in the record and was not entitled to controlling weight.  *Id.* at 631

15  (internal quotations and citations omitted).  Therefore, the ALJ offered sufficient "'specific and

16  legitimate reasons'" for favoring Dr. Pon's opinion over Dr. Newell's.  *See Reddick*, 157 F.3d at

17  725 (quoting *Lester*, 81 F.3d at 830).  Further, even if the ALJ was required to give Dr.

18  Newell's opinion controlling weight, the ALJ properly favored Dr. Pon's opinion, because Dr.

19  Pon provided the ALJ with findings from objective medical tests that Dr. Newell had not

20  considered.  *See Orn*, 495 F.3d at 632 (citation omitted).

**1.  Legal Standard.**

22  As a matter of law, "the Social Security Administration favors the opinion of a treating

23  physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see*

24  20 C.F.R. § 404.1527(d).  The treating physician's opinion is given controlling weight when it

25  is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

26  not inconsistent with the other substantial evidence in [the] case record ... .'"  *Orn*, 495 F.3d at

27  631 (quoting 20 C.F.R. § 404.1527(d)(2)).  If it is given controlling weight, the treating

13

physician's opinion can be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830.

If the treating physician's opinion is not given controlling weight, "the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). However, if the examining physician provides the ALJ with "independent clinical findings that differ from the findings of the treating physician[,]" then such findings are substantial evidence from which an ALJ may favor a examining physician's opinion over the opinion of a treating physician. *Orn*, 495 F.3d at 632 (citation omitted). Independent clinical findings consist of either "(1) diagnosis that differ from those offered by another physician and that are supported by substantial evidence," or "(2) findings based on objective medical tests that the treating physician has not herself considered ... ." *Id.* "Even if the ALJ favors the examining physician's opinion, the treating physician's opinion is still entitled to deference, and the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine what weight to accord that opinion." *Orn*, 495 F.3d at 633.

**2.      Analysis**

Dr. Newell ordered two MRI scans of Harris' back as part of her evaluation of Harris' impairments. (AR at 214, 248.) After considering the MRI results and Harris' subjective symptoms, Dr. Newell found that Harris had diabetes, hypertension, obesity, and a herniated disc manifesting in chronic lower back pain. (AR at 176.) On the basis of those findings, Dr. Newell opined that Harris cannot sit or stand longer than one hour at a time in a four hour work day. (AR at 171.) Further, she noted that Harris could never crouch, kneel, squat or lift even ten pounds of weight, and that Harris could occasionally reach below her knees, and frequently reach above her knees. (AR at 172.)

Dr. Newell's assessment of Harris' functional capacity is in stark contrast to numerous other physicians—including Dr. Pon, the examining physician. Dr. Pon examined Harris on one occasion and performed a series of functional capacity tests. (AR at 113-14.) He found that Harris should be able to stand, sit, and/or walk "for a total of six hours during an eight hour

1  work day." (AR at 114.)  He stated that Harris could climb stairs frequently, that she could
2  crouch, kneel, and squat occasionally, and that she had no restrictions on performing arm/hand
3  or leg/foot controls.  (AR at 114-15.)  He also noted that she should be able to lift up to ten
4  pounds frequently and up to twenty pounds occasionally.  (AR at 115.)  Dr. Pon's opinions are
5  consistent with the record as a whole.  After conducting the same series of physical
6  examinations, four different emergency room physicians at Alta Bates Summit Medical Center
7  verified that Harris' condition was, at varying times, either stable or good.  (AR at 125-26, 131-
8  32, 138-39, 143-44.)  Also, after conducting the same series of functional capacity tests, a
9  different examining physician reached the same conclusions as Dr. Pon as to Harris' ability to
10 perform basic work activities.  (AR at 116-22.)

11     Dr. Newell's opinion was "inconsistent with the other substantial evidence" in the
12 record and is not entitled to controlling weight.  *See Orn*, 495 F.3d at 631 (internal quotations
13 and citations omitted).  When "the treating doctor's opinion is contradicted by another doctor,
14 the ALJ may not reject this opinion without providing 'specific and legitimate reasons'" for
15 doing so.  *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830).  The ALJ stated that he
16 "assigned little weight to the overall assessment of" Dr. Newell because it was "inconsistent
17 and not well supported by the evidence of record[,]" and because it appeared "to be based on
18 subjective complaints and limitations dictated by" Harris.  (AR at 31.)  The ALJ then found that
19 Dr. Newell's assessment of the severity of Harris' impairments was inconsistent with Harris'
20 failure to follow various prescribed courses of treatment—including her failure to lose weight,
21 her refusal to undergo surgery, and her resistance to the TENS therapy unit.  (AR at 31.)  Given
22 that Dr. Newell's opinion was not entitled to controlling weight, the ALJ provided sufficient
23 reasons for favoring Dr. Pon's opinion over Dr. Newell's.

24     Moreover, even if Dr. Newell's opinion was entitled to controlling weight, the ALJ is
25 permitted to favor Dr. Pon's opinion since that opinion was based on "independent clinical
26 findings that differ from the findings of the treating physician[,]" including objective medical
27 tests that the treating physician has not herself considered ... ."  *Orn*, 495 F.3d at 632 (citation
28 omitted).  Although Dr. Newell saw Harris twenty times over a three year interval, the record

15

1  does not describe the kind or quality of her examinations. (AR at 187-88, 191, 198, 203, 211,
2  213, 217, 223-25, 231, 233, 236, 250, 253-54, 263, 266, 273.) As best as the Court can discern,
3  Dr. Newell based her opinion of Harris' impairments on Harris' subjective complaints of pain
4  and the results from two MRI scans of Harris' back. (AR at 214, 248.)

5  Dr. Pon, on the other hand, performed a series of functional capacity tests and physical
6  examinations. (AR at 113-14.) He conducted thorough examinations of Harris' gait, neck,
7  trunk, and thoracolumbar spine, as well as her upper and lower extremities. (AR at 114.) He
8  measured her range of motion, muscle strength, and level of discomfort throughout testing.
9  (AR at 114.) He reviewed Harris' previous MRI scans—which revealed degenerative disc
10 disease and two points of disc protrusion—and attempted, but failed, to confirm these findings
11 in his physical examination. (AR at 114.) Dr. Pon also observed that Harris had no
12 manifestations of pain or discomfort while sitting in the waiting room or walking into the exam
13 room. (AR at 113.) He noted that Harris ambulated with no aid, she had a stable gate, she had
14 no muscle spasms on her lower back, she could flex her torso without manifestations of
15 discomfort, and she had a negative straight leg raising response. (AR at 114.) Dr. Pon
16 performed an array of different objective medical tests that Dr. Newell had not performed, and
17 thus did not consider. Therefore, the ALJ's rejection of Dr. Newell's opinion, in favor of Dr.
18 Pon's, was supported by substantial evidence. *See Orn*, 495 F.3d at 632.

19 Although the ALJ properly favored Dr. Pon's opinion, Dr. Newell's opinion still is
20 entitled to deference. *See id.* at 633. To determine what weight to accord Dr. Newell's opinion,
21 the Court can consider the nature and extent of the treatment relationship, the "supportability"
22 of the opinion, and its consistency with the record as whole. 20 C.F.R. § 404.1527(d)(2)-(4);
23 *see Orn*, 495 F.3d at 633. The treating source is typically given weight, especially if that
24 physician "has seen [the patient] a number of times and long enough to have obtained a
25 longitudinal picture of [her] impairment ... ." § 404.1527(d)(2)(i)-(ii). Using these factors, the
26 ALJ's decision to favor Dr. Pon over Dr. Newell still is supported by substantial evidence. As
27 noted, Dr. Newell was Harris' primary treating physician and she had seen Harris for
28 approximately three years. (AR at 28.) Dr. Pon, however, based his findings on a considerable

16

amount of objective medical testing and explained his opinion in detail. *See* § 404.1527(d)(3). Dr. Pon's opinion is also consistent with the findings of four emergency room physicians at Alta Bates Summit Medical Center and one other examining physician. *See* § 404.1527(d)(4). Therefore, using the factors set out in section 404.1527(d)(2)-(6), the ALJ could justify affording less weight to Dr. Newell's opinion.

In this case, the ALJ was permitted to favor the opinion of the examining physician, Dr. Pon, because it was better supported by and consistent with the record. § 404.1527(d)(2)-(6). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Allen*, 749 F.2d at 579. His decision must be affirmed when it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g). Harris' motion is denied in part and Defendant's motion is granted in part on this basis.

## CONCLUSION

For the foregoing reasons, this Court hereby GRANTS IN PART Harris' motion for summary judgment and GRANTS IN PART Defendant's cross-motion for summary judgment. This matter is remanded to the Commissioner for further proceedings in accordance with this order.

**IT IS SO ORDERED.**

Dated: March 25, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE